IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MICHAEL KEITH DILLON AND SANDRA MARIE DILLON, TRUSTEES OF THE MICHAEL KEITH DILLON AND SANDRA MARIE DILLON TRUST U/T/D SEPTEMBER 27, 2023, JOSEPH ODOM, ROBERT P. MASTROMARINO, LYNN M. MASTROMARINO, SHARON H. MOODY, CHRISTOPHER T. MOODY, WILLIAM A. LAVOICE, DORA ALDERSON, MARY ANN COUGHLIN, MICHAEL HEDGE, and JULIE HEDGE,<br><br>        Plaintiffs,<br><br>vs.<br><br>SUNDEK NATIONAL ACCOUNTS d/b/a CGI COMMERCIAL, BAREFOOT RESORT YACHT CLUB VILLAS CONDOMINIUM ASSOCIATION, STO CORP., JENKINS HANCOCK & SIDES ARCHITECTURE INTERIORS ENGINEERING, INC. f/k/a JENKINS HANCOCK & SIDES ARCHITECTS AND PLANNERS, INC., RANDY L. SIDES, THOMAS E. SEPULVEDA d/b/a STUCCO TEXAS, THOMAS E. SEPULVEDA d/b/a CONTRACTORS DESIGN & INSTALLATION, INC., THOMAS E. SEPULVEDA, Individually, ALFREDO CHAPARRO d/b/a SUPERIOR CUSTOM PAINTING & DESIGN, LLC, and ALFREDO CHAPARRO, Individually,<br><br>        Defendants.<br><br>SUNDEK NATIONAL ACCOUNTS d/b/a CGI COMMERCIAL,<br><br>        Third-Party Plaintiff,<br><br>vs.<br><br>THOMAS E. SEPULVEDA d/b/a STUCCO TEXAS, THOMAS E. SEPULVEDA d/b/a | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 4:23-cv-04410-JD<br>Civil Action No. 4:23-cv-04417-JD<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

CONTRACTORS DESIGN & INSTALLATION, INC.
THOMAS E. SEPULVEDA, Individually, ALFREDO
CHAPARRO d/b/a SUPERIOR CUSTOM PAINTING
DESIGN, LLC, and ALFREDO CHAPARRO, Individ

    Third-Party Defendants.

BAREFOOT RESORT YACHT CLUB VILLAS
CONDOMINIUM ASSOCIATION,

    Third-Party Plaintiff,

vs.

THOMAS E. SEPULVEDA d/b/a STUCCO TEXAS,
THOMAS E. SEPULVEDA d/b/a CONTRACTORS
DESIGN & INSTALLATION, INC., THOMAS E.
SEPULVEDA, Individually, ALFREDO
CHAPARRO d/b/a SUPERIOR CUSTOM
PAINTING & DESIGN, LLC, and ALFREDO
CHAPARRO,

    Third-Party Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Before the Court is Plaintiffs' Consent Motion to Certify Settlement Class, Preliminarily Approve Settlement, Authorize Class Notice, and Schedule Fairness Hearing. (DE 150.) Plaintiffs Joseph Odom, Robert P. Mastromarino, Lynn M. Mastromarino, Sharon H. Moody, Christopher T. Moody, William LaVoice, Dora Alderson, Michael Hedge, and Julie Hedge, individually and on behalf of themselves and others similarly situated, seek certification of a settlement class pursuant to Rule 23 of the Federal Rules of Civil Procedure and preliminary approval of proposed class settlements with Defendants Sto Corp. ("Sto"), Jenkins Hancock & Sides Architecture Interiors Engineering, Inc. f/k/a Jenkins Hancock & Sides, Architects and Planners, Inc. ("JHS"), Randy L. Sides ("Sides"), and Barefoot Resort Yacht Club Villas

2

Condominium Association ("Association") (collectively, the "Settling Defendants"). (DE 150.) The Motion is filed with the consent of the Settling Defendants. (*Id*. at 2.) The proposed settlement does not resolve Plaintiffs' or the Association's claims against Sundek National Accounts d/b/a CGI Commercial, Thomas E. Sepulveda d/b/a Stucco Texas, Thomas E. Sepulveda d/b/a Contractors Design & Installation, Inc., Thomas E. Sepulveda individually, Alfredo Chaparro d/b/a Superior Custom Painting & Design, LLC, or Alfredo Chaparro individually. (*Id*. at n.1.)

The parties have submitted proposed settlement agreements, affidavits, a proposed class notice, and supporting memoranda. (DE 150; DE 150-1; DE 150-2; DE 150-3; DE 150-4; DE 150-5; DE 150-6; DE 150-7.) Having reviewed the Motion, the record, the proposed settlements, and the applicable law, the Court enters the following Order.

## I.    BACKGROUND

### A.    Factual Background

This case arises from alleged construction defects and related maintenance, repair, design, construction, and management issues at the Barefoot Resort Yacht Club Villas Horizontal Property Regime in North Myrtle Beach, South Carolina (the "Property"). (DE 49 ¶¶ 68–79.) The Property consists of three condominium buildings containing 145 residential units. (DE 65-2; Alston Aff. DE 150-1 ¶ 7.) Plaintiffs are individual unit owners at the Property and members of the Association. (DE 49 ¶¶ 1–12.)

Plaintiffs allege that, by virtue of their ownership of condominium units at the Property, they own undivided percentage interests in the Property's common

elements and limited common elements as tenants-in-common. (DE 49 ¶ 10.) The Association is a nonprofit mutual benefit corporation created under the South Carolina Horizontal Property Act and governed by the Master Deed and By-Laws. (DE 49 ¶ 12; DE 65-2.) The Association is charged with the management of the Property, including the maintenance and repair of common elements, and is empowered to make, levy, and collect assessments to defray the costs of maintaining, repairing, and replacing those common elements. (DE 49 ¶¶ 101, 109, 114, 145–50; DE 65-2.) The Association is also empowered to initiate legal action to carry out its duties, including claims against entities involved with the design, construction, or repair of the Property's common elements. (DE 49 ¶¶ 101, 109, 114; DE 94 at 4.)

Plaintiffs contend that serious defects and deficiencies exist in the Property's exterior cladding system and related components. (DE 49 ¶¶ 68–71.) The alleged deficiencies include, among other things, improper installation of stucco cladding and components; cracking and delamination of exterior stucco cladding on all elevations of all buildings; lack of, or improper integration of, the exterior stucco system with existing balcony and walkway deck coatings; lack of through-wall flashing at window openings; lack of proper preparation of the existing concrete substrate before stucco application; and lack of proper bonding agent applied to concrete surfaces before stucco application. (DE 49 ¶¶ 68–71.) Plaintiffs allege these conditions allowed water to infiltrate between the exterior cladding and concrete substrate, resulting in delamination, blistering, cracking, and other damage to the Property. (DE 49 ¶¶ 68–79.)

Plaintiffs further allege that the Association failed to maintain and repair the Property properly. (DE 49 ¶¶ 139–60.) Specifically, Plaintiffs contend that the Association's Board of Directors failed to assess for necessary repairs adequately, failed to fund repairs adequately, and deferred maintenance, repair, and reserve projects, thereby contributing to damage to the Property, including the exterior stucco cladding, concrete substrate, roof, and other components. (DE 49 ¶¶ 139–60.)

Plaintiffs have asserted damages exceeding $16,000,000.00, consisting of repair, inspection, and engineering costs. (DE 120.) The Association has produced estimates ranging from approximately $6,000,000.00 to $12,000,000.00. (DE 131-1.) The Settling Defendants deny wrongdoing, fault, and liability and have asserted defenses to Plaintiffs' and the Association's claims. (DE 58; DE 64; DE 65; DE 67.)

The proposed settlement provides for total settlement proceeds of $1,000,000.00. (DE 150-7 ¶ 6; DE 150-8 at 6.) Under the proposed settlement terms, the settlement proceeds are to be placed in an account maintained and controlled by the Association's property management company. (DE 150-4 ¶ 10; DE 150-5 ¶ 10.) The proceeds are restricted to repairs to the Property's common elements and are intended to offset any assessment for common-element repairs that otherwise might be levied against class members. (*Id.*) A class member who opts out of the settlement will *not* receive an offset toward an assessment on that member's unit for common-element repairs. (*Id.*)

The proposed settlement does not include claims Plaintiffs or the Association may have against the contractors that allegedly performed repairs to the Property in

2014, including Sundek National Accounts d/b/a CGI Commercial, Thomas E. Sepulveda d/b/a Stucco Texas, Thomas E. Sepulveda d/b/a Contractors Design & Installation, Inc., Thomas E. Sepulveda individually, Alfredo Chaparro d/b/a Superior Custom Painting & Design, LLC, and Alfredo Chaparro individually. (DE 150 at 2 n.1; DE 150-8 at 5.)

### B.     Procedural Background

This matter has a complex procedural history involving related and consolidated cases. The lead case, Civil Action No. 4:23-cv-04410-JD, was removed to this Court from the Horry County Court of Common Pleas on August 31, 2023. (DE 1.) Civil Action No. 4:23-cv-04417-JD was removed on September 1, 2023, and is identified on the docket as a member case related to the lead action. (Civil Action No. 4:23-cv-04417-JD, DE 1.) Both cases are assigned to the undersigned. (Civil Action No. 4:23-cv-04417-JD, DE 1.)

Plaintiffs filed an Amended Complaint asserting claims arising from the alleged design, construction, repair, maintenance, and management of the Property. (DE 49.) The Association also asserted claims against Sto and JHS for damages allegedly resulting from work performed at the Property. (DE 64 ¶¶ 258–92.)

The litigation has included written discovery, document exchanges, depositions, engineering inspections, motion practice involving threshold legal issues, and two mediations. (DE 150-8 at 4.) The mediations occurred in August 2025 and January 2026, after which the parties continued settlement negotiations. (*Id.* at 5.)

Those negotiations resulted in proposed settlements among Plaintiffs, the Association, Sto, JHS, and Sides. (DE 150-4; DE 150-5; DE 150-6.)

Several threshold motions have shaped the posture of the case. Sto, JHS, and Sides moved to dismiss Plaintiffs' claims, arguing, among other things, that Plaintiffs improperly brought direct claims for injuries derivative of harm to the Association or common elements. (DE 59; DE 65; DE 83.) In its December 26, 2024, Order, the Court granted the motions to dismiss filed by Sto, JHS, and Sides. (DE 94.) The Court concluded that the Association was empowered to initiate legal action to carry out its duties, including claims against entities involved with the design, construction, or repair of the Property's common elements, and that Plaintiffs' claims against those defendants were derivative in nature. (DE 94 at 4, 10–12.)

Plaintiffs moved for reconsideration under Rule 59(e) or, alternatively, certification of judgment under Rule 54(b). (DE 102.) In its May 19, 2025, Order, the Court denied that motion, finding that Plaintiffs had not satisfied the demanding standard for reconsideration and declining to revisit its prior ruling on the derivative nature of Plaintiffs' claims. (DE 119 at 3–4, 8–9.)

The Association also moved for judgment on the pleadings as to Plaintiffs' claims. (DE 123.) Following notice of settlement, the Court denied that motion as moot, with leave to refile if a settlement was not reached. (DE 144.)

Sto and JHS have asserted affirmative defenses to the Association's claims that have not yet been fully litigated, including statute-of-limitations and statute-of-

repose defenses. (DE 9 ¶ 118; DE 38 at 7.) Sto has also asserted a release defense based on an alleged release executed by an Association officer in 2014. (DE 9 ¶ 115.)

On April 24, 2026, Plaintiffs filed the present Motion to Certify Settlement Class, Preliminarily Approve Settlement, Authorize Class Notice, and Schedule Fairness Hearing. (DE 150.) The Motion requests that the Court certify a settlement class, preliminarily approve the proposed settlements, authorize notice to the class, and set a fairness hearing for final approval. (*Id.*)

As presented, the proposed settlement would resolve claims among Plaintiffs, the putative class, the Association, Sto, JHS, and Sides, but it would not resolve remaining claims involving the non-settling defendants. (DE 150 at 2 n.1.)

The Court understands the proposed settlement to include both the Association's compromise of claims it is empowered to assert concerning common-element repair damages and a proposed settlement-class release or resolution of any participating owners' related interests or claims. The parties shall confirm this structure in the revised notice and in any motion for final approval.

Accordingly, this Order addresses only whether preliminary approval and settlement-class certification are appropriate as to the proposed settlements now before the Court.

## II.    LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (quoting *Califano v. Yamasaki*, 422 U.S. 682, 700-701 (1979)).

8

The prerequisites for a class action are established by Rule 23(a) of the Federal Rules of Civil Procedure, which states, as follows:

> Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The four aforementioned prerequisites are referred to as "numerosity," "commonality," "typicality," and "adequacy of representation." *Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 362 (4th Cir. 2004). "In addition, 'the class action must fall within one of the three categories enumerated in Rule 23(b).'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014) (citation omitted). Rule 23(b)(3), Fed. R. Civ. P., "requires the court to find (1) that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members; (the predominance requirement), and (2) that 'a class action is superior to other available methods for the fair and efficient adjudication of the controversy' (the superiority requirement)." *Gariety*, 368 F.3d at 362 (quoting Fed. R. Civ. P. 23(b)(3)). "The predominance requirement is similar to but 'more stringent' than the commonality requirement. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (citation omitted). Rule 23(b)(3)'s predominance requirement is satisfied when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." *Gariety,* 368 F.3d at 362.

"Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable,'" also described as the "ascertainability requirement." *EQT Prod. Co.*, 764 F.3d at 358. Although this does not mean that every member of a class needs to be identified at the time of certification, there must be an "administratively feasible [way] for the court to determine whether a particular individual is a member' at some point." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019)). Courts routinely analyze whether Plaintiff has established each Rule 23, Fed. R. Civ. P., element "by a preponderance of the evidence."[1] *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). If one of the requirements necessary for class certification is not met, the effort to certify a class must fail. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003) ("Class actions must meet several criteria," including compliance "with the four prerequisites established in Rule 23(a)."). The court must go beyond the pleadings, take a "'close look' at relevant matters," conduct "a 'rigorous analysis' of such matters," and make "'findings' that the requirements of Rule 23 have been satisfied." *See Gariety*, 368 F.3d at 365 (internal and external citations omitted). While the court should not "include consideration of whether the proposed class is likely to prevail ultimately on the merits," *id.* at 366 (citing *Eisen v. Carlisle and Jacquelin*, 417 U.S.

---

[1]    *See also In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 104 (E.D. Va. 2009) (recognizing the Fourth Circuit has not specified the standard of proof to apply when evaluating the elements of Rule 23, but applies the "preponderance standard" based on persuasive authority); *In re Safety–Kleen Corp. Bondholders Litigation,* 2004 WL 3115870, at *2 (D.S.C. 2004) ("Although there is a scarcity of cases on [the standard of proof the court should use in making its findings in evaluating the propriety of class certification], the existing authority suggests that the preponderance of the evidence standard should be applied.").

156, 177-78 (1974)), "sometimes it may be necessary for the district court to probe behind the pleadings before coming to rest on the certification question," *id.* (citing *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982)).

### III.    DISCUSSION

Plaintiffs request that the Court certify a settlement class, preliminarily approve the proposed class settlements, authorize notice to the proposed class, and schedule a fairness hearing. (DE 150.) Because the proposed certification is for settlement purposes only, the Court need not consider trial manageability issues that would otherwise be relevant under Rule 23(b)(3). However, the Court must still determine whether the proposed settlement class satisfies Rule 23(a), whether the action satisfies Rule 23(b)(3), whether the Court will likely be able to approve the proposed settlement under Rule 23(e), and whether the proposed notice is sufficient. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Before addressing Rule 23, the Court *emphasizes* that this settlement-only certification does not reconsider, modify, or vacate DE 94 or DE 119. The Court previously held that Plaintiffs' direct claims seeking recovery for common-element damage, Association repair funding, and related assessment injuries were derivative of the Association's rights and were not individually maintainable. The Court's Rule 23 findings below are made only for settlement purposes, in light of the Association's participation in the settlement, the proposed use of settlement proceeds for common-element repairs, and the need to provide notice, objection rights, opt-out rights, and

11

finality to current owners whose assessment obligations or released interests may be affected.

## A.    Settlement Class Certification

Plaintiffs seek certification of the following settlement class:

All persons and entities that own a condominium unit at the Barefoot Resort Yacht Club Villas Condominium ("Property") in the City of North Myrtle Beach, Horry County, South Carolina ("the Settlement Class" or "Class Members").

Excluded from the Class are: (a) any Judge presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendants and their legal representatives, assigns and successors of Defendants and Defendants' current or former employees, investors, members, or officers; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

(DE 150-8 at 7–8; DE 150-7 at 2–3.) For the reasons below, and for settlement purposes only, the Court finds that the proposed settlement class satisfies Rule 23(a) and Rule 23(b)(3).

### 1.    Ascertainability

As a threshold matter, the Court finds that the proposed settlement class is ascertainable. The proposed class is limited to persons and entities who own condominium units at the Property as of the date of this Order. (DE 150-7 at 2–3.) Membership can be determined by objective criteria through the Association's ownership records, property management records, and public real estate records. The Property contains 145 residential units, and the identity and mailing information for current unit owners should be readily available from the Association and its property manager. (DE 65-2; Alston Aff. ¶ 7, DE 150-1.) The goal is not to "identify every class

12

member at the time of certification," but to define a class in such a way as to ensure that there will be some "administratively feasible [way] for the court to determine whether a particular individual is a member" at some point. *Krakauer*, 925 F.3d at 658.

Accordingly, the Court finds, for purposes of preliminary approval and settlement-class certification, that the proposed class is sufficiently definite and administratively feasible.

### 2. **Numerosity**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). "No specified number is needed to maintain a class action," and "[a]pplication of the rule is to be considered in light of the particular circumstances of the case." *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967); *see also* 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1762 (4th ed. 2026) ("[C]ourts should not be so rigid as to depend upon mere numbers as a guideline on the practicability of joinder; a determination of practicability should depend upon all the circumstances surrounding a case."). The Property consists of three condominium buildings containing 145 residential units. (DE 65-2; Alston Aff. ¶ 7, DE 150-1.) Although the precise number of owners may differ from the number of units, the record reflects that the proposed class consists of a sufficiently numerous group of condominium unit owners whose joinder would be impracticable, particularly given that the settlement concerns alleged common-element defects and repair obligations

affecting owners throughout a single condominium regime. The Court, therefore, finds that numerosity is satisfied.

### 3.    Commonality

Rule 23(a)(2) requires questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This requirement is satisfied where the class claims depend on a common contention capable of classwide resolution. *See Walmart Stores, Inc.*, 564 U.S. at 350.

Here, for settlement purposes only, the proposed class members' settlement-related interests arise from the same condominium regime, the same three-building Property, the same alleged exterior cladding and common-element conditions, the same alleged maintenance and repair issues, and the same proposed use of settlement proceeds. (DE 49 ¶¶ 68–79, 139–60.) Common questions include whether the settlement fairly resolves claims and interests relating to the Property's common elements; whether the Association's claims face substantial defenses; whether the proposed settlement proceeds should be restricted to common-element repairs; whether the proposed assessment-offset mechanism is fair; and whether the proposed release is appropriately limited. (*Id.*; DE 94; DE 119; DE 150-8.)

These issues are common to the proposed class and are capable of resolution in a manner that will generate common answers for class members. The Court, therefore, finds that commonality is satisfied.

### 4.    Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of those of the class. Fed. R. Civ. P. 23(a)(3). "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff,

so go the claims of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998)). Thus, the typicality analysis requires a comparison of the named plaintiffs' claims or defenses with those of the absent class members. *Id.* at 467. Although typicality does not require the named plaintiffs' claims and the class claims to be "perfectly identical or perfectly aligned," the representative parties' interests must be sufficiently interrelated with those of the class such that prosecution of their own claims will advance the interests of absent class members. *Id.* at 466–67.

The named Plaintiffs are current condominium unit owners at the Property. For settlement purposes only, their interests are typical of absent current owners because all are members of the Association whose assessment obligations, settlement-release rights, and potential benefit from the proposed common-element repair fund may be affected by the settlement. This finding does not rest on, or revive, any direct claim by Plaintiffs for common-element repair damages previously dismissed in DE 94 and DE 119. Rather, the Court finds only that the named Plaintiffs' settlement-related interests are sufficiently aligned with those of absent current owners to permit notice, objection rights, opt-out rights, and finality to participating class members to the extent such rights or interests exist.

The Court, therefore, finds that typicality is satisfied for settlement purposes only.

### 5.    Adequacy of Representation

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.,* 521 U.S. at 625. Class representatives must be part of the class, possess the same interest, and suffer the same injury as the class members. *Id*. at 625–26; *Gunnells*, 348 F.3d at 425, 430–31. The adequacy requirement also requires the Court to consider whether proposed class counsel are qualified, experienced, and able to conduct the litigation. *See Gunnells*, 348 F.3d at 430; Fed. R. Civ. P. 23(g)(1)(A).

At this preliminary stage, the Court is satisfied that the named Plaintiffs' interests are aligned with those of the settlement class. Plaintiffs, like the absent class members, are unit owners who allegedly face economic consequences arising from common-element defects and repair assessments. (DE 49 ¶¶ 1–12, 68–79, 139–60.) The settlement proceeds are directed to common-element repairs and assessment offsets, which benefit class members in the same manner. (DE 150-4 ¶ 10; DE 150-5 ¶ 10.) Thus, the record does not reveal a conflict between the named Plaintiffs and the absent class members.[2]

---

[2]    The Court also considers the Association's dual role as a Settling Defendant, as a party asserting claims relating to the Property, and as the entity whose property manager will maintain the settlement proceeds. At this preliminary stage, the Court does not find that this structure defeats adequacy because the proposed proceeds are restricted to common-element repairs and because class members will receive notice, objection rights, and opt-out rights. At final approval, however, the parties must address whether the Association's role creates any conflict and how the settlement proceeds will be safeguarded, accounted for, and applied.

16

The Court also finds that the proposed class counsel have adequately represented the proposed class. Counsel have litigated this matter since its removal, engaged in written discovery and document exchange, participated in depositions and engineering inspections, briefed threshold legal issues, and participated in two mediations before reaching the proposed settlement. (DE 150-8 at 4–5.) Counsel also submitted affidavits and supporting materials in support of preliminary approval. (Alston Aff., DE 150-1; Porcher, P.E., Aff., DE 150-2; Wylie, IV, Aff., DE 150-3.) These efforts support a preliminary finding that counsel have fairly and adequately represented the proposed settlement class and satisfy the relevant considerations under Rule 23(g). *See* Fed. R. Civ. P. 23(g)(1)(A).

The Court, therefore, finds that Rule 23(a)(4) is satisfied and appoints Plaintiffs' counsel as class counsel for settlement purposes under Rule 23(g).

### 6.    Predominance

Rule 23(b)(3) requires that questions of law or fact common to class members predominate over questions affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3). The predominance requirement is "far more demanding" than Rule 23(a)'s commonality requirement and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Gariety*, 368 F.3d at 362 (quoting *Amchem*, 521 U.S. at 623–24).

In the settlement context, the Court need not determine whether the case, if tried, would present intractable management problems. *See Amchem*, 521 U.S. at 620. Even so, the predominance requirement remains important and must be

17

satisfied because Rule 23(a) and (b)'s safeguards are "of vital importance in the settlement context." *Id*. Common issues predominate for settlement purposes because the proposed settlement turns on a single property, a single condominium regime, a common repair fund, a common assessment-offset structure, and common questions concerning the fairness and scope of the release. Although owners may have different unit percentages or assessment shares, those differences do not defeat predominance because the proposed settlement does not distribute individualized damages. Nothing in this predominance finding alters the Court's prior holding that common-element repair claims are derivative of the Association's rights.

Accordingly, the Court finds that common questions predominate for settlement purposes only.

### 7.    Superiority

Rule 23(b)(3) also requires that a class action be superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). The superiority inquiry considers whether class treatment would "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment). The Fourth Circuit has similarly recognized that class treatment may promote efficiency by consolidating recurring common issues, conserving judicial resources, and reducing the risk of inconsistent adjudications. *See Gunnells*, 348 F.3d at 424–27.

The Court finds that the requirement is satisfied. The proposed settlement concerns alleged common-element defects and repair obligations affecting owners within a single condominium regime. A settlement class is superior for the limited purpose of providing uniform notice, objection rights, opt-out rights, and finality to current owners whose assessment obligations or released interests may be affected by the settlement. The Court does not base superiority on any determination that current owners could separately prosecute direct common-element repair claims contrary to DE 94 and DE 119.

Accordingly, the Court finds that a class action is superior for settlement purposes.

## B.    Preliminary Approval of the Proposed Settlement

Having determined that the proposed settlement class may be certified for settlement purposes, the Court next considers whether preliminary approval is appropriate under Rule 23(e). A class action may be settled only with court approval. *See* Fed. R. Civ. P. 23(e). At this stage, the Court must determine whether giving notice is justified by the parties' showing that the Court will likely be able to approve the proposed settlement under Rule 23(e)(2) and likely be able to certify the class for purposes of judgment. Fed. R. Civ. P. 23(e)(1)(B).

Rule 23(e)(2) requires the Court to consider whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the

19

effectiveness of the proposed method of distributing relief, the terms of any proposed attorneys' fee award, and any agreement required to be identified under Rule 23(e)(3); and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

The Fourth Circuit has recognized that Rule 23(e)'s primary concern is the protection of absent class members whose rights may not have been given adequate consideration during settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). In evaluating a proposed class settlement, courts have considered both fairness and adequacy. *Id.* at 158–59. Fairness focuses on whether the settlement was reached through good-faith, arm's-length bargaining, considering:

> (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation.

*Id.* at 159. Adequacy considers:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*Id.*; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1172–73 (4th Cir. 1975).

The Rule 23(e)(2) factors, as amended in 2018, guide the Court's analysis and are not displaced by earlier formulations of the fairness and adequacy factors. The Court, therefore, applies Rule 23(e)(1)(B) and Rule 23(e)(2), while considering the traditional Fourth Circuit factors to the extent they bear on the fairness, reasonableness, and adequacy of the proposed settlement.

The Court finds that the proposed settlement satisfies Rule 23(e)(1)'s preliminary-approval standard, subject to the conditions set forth below.

### 1.     Adequate Representation

For the reasons already stated in connection with Rule 23(a)(4), the Court finds that Plaintiffs and proposed class counsel have adequately represented the proposed settlement class. *See* Fed. R. Civ. P. 23(e)(2)(A). Plaintiffs' settlement-related interests are aligned with absent class members because all class members are current unit owners whose assessment obligations, settlement-release rights, and potential benefit from the proposed common-element repair fund may be affected by the settlement. (DE 49 ¶¶ 1–12, 68–79, 139–60.) Proposed class counsel have actively litigated the matter, participated in discovery and motion practice, and negotiated the settlement after two mediations. (DE 150-8 at 4–5.) These facts support a preliminary finding that the class representatives and class counsel have adequately represented the class.

### 2.     Arm's-Length Negotiations

The record also supports a preliminary finding that the proposed settlement was negotiated at arm's length. *See* Fed. R. Civ. P. 23(e)(2)(B). In assessing whether a settlement was reached through good-faith bargaining, courts consider the posture of the case, the extent of discovery, the circumstances surrounding the negotiations, and the experience of counsel. *In re Jiffy Lube*, 927 F.2d at 159.

Those considerations support preliminary approval here. The parties engaged in written discovery and document exchange, depositions, engineering inspections, motion practice, and two mediations before reaching the proposed settlement. (DE

21

150-8 at 4–5.) The mediations occurred in August 2025 and January 2026, and negotiations continued thereafter. (DE 150-8 at 5.) The record does not suggest collusion. Accordingly, the Court finds, for preliminary approval purposes, that the proposed settlement resulted from arm 's-length negotiations.

### 3.    Adequacy of Relief

As for adequacy, the Court has considered whether the relief provided by the proposed settlement appears adequate, taking into account the costs, risks, and delay of continued litigation, as well as the other considerations identified in Rule 23(e)(2)(C). Fed. R. Civ. P. 23(e)(2)(C). The traditional adequacy factors also direct the Court to consider the relative strength of the plaintiffs' case, difficulties of proof or strong defenses, the anticipated duration and expense of additional litigation, the solvency of defendants and likelihood of recovery on a litigated judgment, and the degree of opposition to the settlement. *See In re Jiffy Lube*, 927 F.2d at 159; *Flinn*, 528 F.2d at 1173.

The proposed settlement provides total settlement proceeds of $1,000,000.00. (DE 150-7 at 5; DE 150-8 at 6.) Plaintiffs have asserted damages exceeding $16,000,000.00, and the Association has produced estimates ranging from approximately $6,000,000.00 to $12,000,000.00. (DE 120; DE 131-1.) The settlement, therefore, represents a significant discount from claimed damages. However, the record also reflects significant litigation risks.

Most notably, this Court previously dismissed Plaintiffs' claims against Sto, JHS, and Sides, concluding that the claims were derivative in nature and that the

Association was empowered to pursue claims relating to the design, construction, and repair of common elements. (DE 94 at 4, 10–12.) The Court later denied Plaintiffs' motion for reconsideration and declined to revisit that ruling. (DE 119 at 3–4, 8–9.) In addition, Sto and JHS have asserted affirmative defenses to the Association's claims, including statute-of-limitations and statute-of-repose defenses, and Sto has asserted a release defense based on an alleged release executed by an Association officer in 2014. (DE 9 ¶¶ 115, 118; DE 38.) Continued litigation would likely involve substantial additional discovery, expert proceedings, dispositive motions, trial preparation, trial, and potential appeal.

In light of these risks, the proposed $1,000,000.00 settlement appears adequate for purposes of preliminary approval. The proposed method of relief is also appropriate for the nature of the claims: the proceeds are restricted to common-element repairs and are intended to offset assessments that otherwise might be levied against class members. (DE 150-4 ¶ 10; DE 150-5 ¶ 10.) The settlement also preserves claims against non-settling defendants, including those allegedly involved in the 2014 repair work. (DE 150 at 2 n.1; DE 150-8 at 5.)

However, Rule 23(e)(2)(C)(iii) requires the Court to consider the terms of any proposed attorneys' fee award. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). Before final approval, the Court will require additional information concerning any requested attorneys' fees and costs, including the amount or percentage sought, whether such fees and costs will be paid from the $1,000,000.00 settlement proceeds, and the effect of any fee award on the funds available for common-element repairs. The proposed

notice refers to attorneys' fees and costs, but the Court must be able to evaluate the fee request before determining whether the settlement is fair, reasonable, and adequate. (DE 150-7.)

Subject to that condition, the Court finds that the proposed relief appears adequate for purposes of preliminary approval.

### 4.    Equitable Treatment of Class Members

The proposed settlement appears to treat class members equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). The settlement proceeds are restricted to common-element repairs and are intended to offset assessments that otherwise might be levied against class members. (DE 150-4 ¶ 10; DE 150-5 ¶ 10.) This structure corresponds to the common-element nature of the alleged damages and the Association's role in maintaining and repairing common elements. (DE 49 ¶¶ 101, 109, 114, 145–50; DE 65-2.) Class members retain the right to opt out, object, or appear at the fairness hearing. (DE 150-7.)

The Court notes that the settlement provides that any class member who opts out will *not* receive an offset toward an assessment on that member's unit for common-element repairs. (DE 150-4 ¶ 10; DE 150-5 ¶ 10.) The Court will require the final notice to clearly explain this consequence so that class members can make an informed decision. Before final approval, the parties shall identify the authority under the Master Deed, By-Laws, the Horizontal Property Act, or other applicable law permitting the Association to deny or withhold an assessment offset from a class

member who opts out of the settlement while settlement proceeds are used for common-element repairs.

Accordingly, the Court finds that the proposed settlement is sufficiently within the range of likely approval to warrant notice to the settlement class, subject to the notice revisions and conditions set forth below.

## C.     Notice to the Class

Rule 23(e)(1) requires the Court to direct notice in a reasonable manner to all class members who would be bound by the proposal. *See* Fed. R. Civ. P. 23(e)(1). For a Rule 23(b)(3) settlement class, the notice must also satisfy Rule 23(c)(2)(B), which requires the best notice practicable under the circumstances and must clearly and concisely state, in plain language, the nature of the action, the definition of the certified class, the class claims and issues, the right to enter an appearance through counsel, the right to request exclusion, the time and manner for requesting exclusion, and the binding effect of a class judgment. Fed. R. Civ. P. 23(c)(2)(B).

The proposed notice generally describes the nature of the action, the proposed settlement, the class definition, the claims to be released, the claims against non-settling defendants that are not being released, the right to object, the right to opt out, and the date of a fairness hearing. (DE 150-7.) Because the class consists of current unit owners at a single condominium property, notice by U.S. mail and email to all class members at addresses maintained by the Association or its property manager appears to be the best notice practicable under the circumstances. (DE 150-7.)

However, the Court will require revisions before notice is issued. Specifically, the notice must:

1. clearly disclose the amount or maximum amount of attorneys' fees and costs that class counsel intends to request and the deadline for filing the fee petition;

2. state where class members may review the settlement agreements, the motion for final approval, and any fee petition before the objection and opt-out deadlines;

3. clearly explain that a class member who opts out will not receive an offset toward an assessment on that member's unit for common-element repairs;

4. clarify whether former unit owners are excluded from the settlement class and, if so, confirm that the settlement does not release any claims of former owners who are not included in the class;

5. state that any release approved at final approval must be consistent with DE 94 and DE 119; that the settlement shall not be construed to revive any dismissed direct claim against Sto, JHS, Sides, or the Association; and that the settlement shall not release claims of persons or entities who are not members of the Settlement Class unless the parties identify a legal basis for such release;

6. state that any release of claims against Sides shall be construed consistently with the Court's prior ruling that Plaintiffs' fiduciary-duty claim against Sides was not separately maintainable as a direct claim;

7. explain that the proposed settlement includes both the Association's compromise of claims it is empowered to assert concerning common-element repair damages and a proposed settlement-class release or resolution of any participating owners' related interests or claims as consistent with DE 94 and DE 119;

8. remove or revise any language suggesting that a class member who submits a timely written objection must also appear at the fairness hearing to preserve that objection;

9. correct typographical or clerical errors, including errors in addresses, email addresses, city names, and zip codes;

10. summarize, in plain language, the Court's prior rulings in DE 94 and DE 119 that Plaintiffs' direct claims for common-element repair damages were held derivative of the Association's rights and not individually

maintainable, and explain how the proposed settlement is structured in light of those rulings; and

11. include any additional information necessary to satisfy Rule 23(c)(2)(B) and Rule 23(e).

The Settling Defendants shall file, before the final approval hearing, proof of compliance with 28 U.S.C. § 1715 or a memorandum explaining why notice under § 1715 is not required. The Court will not enter any order finally approving the proposed settlement earlier than permitted by § 1715(d), if that provision applies.

Subject to these revisions and requirements, the Court finds that the proposed method of notice is reasonable and satisfies Rule 23 at the preliminary-approval stage.

## D.    Conditions of Preliminary Approval and Fairness Hearing

For the reasons above, the Court finds that it will likely be able to certify the proposed settlement class for purposes of judgment and will likely be able to approve the proposed settlement as fair, reasonable, and adequate, subject to the conditions stated in this Order. *See* Fed. R. Civ. P. 23(e)(1)(B).

Accordingly, preliminary approval is appropriate, provided that the parties submit a revised proposed notice and any fully executed settlement agreements not already executed. The Court will schedule a fairness hearing to determine whether final approval should be granted; whether the settlement class should be finally certified; whether the proposed settlements are fair, reasonable, and adequate; whether any requested attorneys' fees and costs should be approved; and whether final judgment should be entered as to the Settling Defendants.

At final approval, the parties shall be prepared to address: (1) the number of class members who received notice; (2) the number of objections and opt-outs; (3) the amount of attorneys' fees and costs requested; (4) the net amount available for common-element repairs; (5) the mechanism for maintaining and accounting for the settlement proceeds; (6) CAFA compliance or non-applicability; (7) the effect of the settlement and release on claims against the Settling Defendants and non-settling defendants, including whether the release is consistent with DE 94 and DE 119 and whether any release of claims against Sides is consistent with the Court's prior ruling regarding Plaintiffs' fiduciary-duty claim; (8) whether the settlement separately compromises the Association's claims and any participating owners' settlement-related interests or claims, and whether the revised notice accurately explains that structure; and (9) whether the Association's role in the settlement creates any conflict and how the settlement proceeds will be safeguarded, accounted for, and applied.

## IV.     CONCLUSION

For these reasons, Plaintiffs' Consent Motion to Certify Settlement Class, Preliminarily Approve Settlement, Authorize Class Notice, and Schedule Fairness Hearing (DE 150) is **GRANTED IN PART**, subject to the conditions stated in this Order.

The Court **CERTIFIES**, for settlement purposes only, the following Settlement Class:

> All persons and entities that own a condominium unit at the Barefoot Resort Yacht Club Villas Condominium ("Property") in the City of North Myrtle Beach, Horry County, South Carolina ("the Settlement Class" or "Class Members").

28

Excluded from the Class are: (a) any Judge presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendants and their legal representatives, assigns and successors of Defendants and Defendants' current or former employees, investors, members, or officers; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

The Court **APPOINTS** Plaintiffs Joseph Odom, Robert P. Mastromarino, Lynn M. Mastromarino, Sharon H. Moody, Christopher T. Moody, William LaVoice, Dora Alderson, Michael Hedge, and Julie Hedge as class representatives for settlement purposes only.

The Court **APPOINTS** Plaintiffs' counsel as class counsel for settlement purposes under Rule 23(g).

The Court **PRELIMINARILY APPROVES** the proposed settlement for purposes of issuing class notice and conducting a final approval hearing. Preliminary approval is without prejudice to the Court's further consideration at final approval of whether the proposed settlement is fair, reasonable, and adequate under Rule 23(e).

Before notice is issued, the parties shall file a revised proposed class notice consistent with this Order. The revised notice shall address the deficiencies identified above, including disclosure of the amount or maximum amount of attorneys' fees and costs class counsel intends to request, whether such fees and costs will be paid from the $1,000,000.00 settlement proceeds, the deadline for filing the fee petition, where class members may review the settlement agreements and related filings, the consequences of opting out, clarification regarding former unit owners, the scope of any proposed release, the effect of the Court's prior Orders at DE 94 and DE 119, the

release of any claims against Sides, and the distinction between the Association's compromise of claims and participating owners' settlement-related interests.

The Settling Defendants shall file, before the final approval hearing, proof of compliance with 28 U.S.C. § 1715 or a memorandum explaining why notice under § 1715 is not required. The Court will not enter any order finally approving the proposed settlement earlier than permitted by § 1715(d), if that provision applies.

The parties shall file any fully executed settlement agreements that have not already been filed with the Court. The parties shall also file any motion for final approval and any motion for attorneys' fees and costs sufficiently in advance of the objection deadline to permit class members a fair opportunity to review those filings.

A final approval hearing will be scheduled by separate order. At that hearing, the Court will determine whether the Settlement Class should be finally certified; whether the proposed settlement should be finally approved as fair, reasonable, and adequate; whether any requested attorneys' fees and costs should be approved; whether the notice program satisfied Rule 23 and due process; and whether final judgment should be entered as to the Settling Defendants.

Nothing in this Order resolves any claims against the non-settling defendants, including Sundek National Accounts d/b/a CGI Commercial, Thomas E. Sepulveda d/b/a Stucco Texas, Thomas E. Sepulveda d/b/a Contractors Design & Installation, Inc., Thomas E. Sepulveda individually, Alfredo Chaparro d/b/a Superior Custom

Painting & Design, LLC, or Alfredo Chaparro individually.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
May 11, 2026